IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF
COLUMBIA
Civil Division

| | |
|---|---|
| SUSIE M. POINDEXTER | ) |
| | ) |
| vs. | ) |
| | ) Case Number: 09-CV-1392 (PLF) |
| WACHOVIA MORTGAGE CORPORATION, et al. | ) |
| | ) |

---

### PLAINTIFF'S OPPOSITION TO DEFENDANTS' WACHOVIA MORTGAGE CORPORATION, WELLS FARGO BANK, N.A., F/K/A WACHOVIA MORTGAGE FSB (AND F/K/A WORLD SAVINGS BANK, FSB) AND WELLS FARGO & COMPANY MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Plaintiff Susie M. Poindexter, by and through undersigned counsel, files this memorandum in opposition to Wachovia Mortgage Corporation, Wells Fargo Bank, N.A., f/k/a Wachovia Mortgage FSB (and f/k/a World Savings Bank, FSB), and Wells Fargo & Company (collectively "Defendants") Motion to Dismiss Plaintiff's Amended Complaint.  [Docket #22] For the reasons set forth below, Defendants' motion should be denied.

### INTRODUCTION

This action arises as a result of predatory and abusive mortgage lending practices which resulted in Plaintiff Susie Poindexter, a 73-year old African-American D.C. resident, being fraudulently induced to refinance her mortgage with a loan that she could not afford.  The closing on Ms. Poindexter's loan took place at a McDonald's fast food restaurant in the District of Columbia.  Ms. Poindexter did not receive copies of any loan paperwork or the required Truth in Lending disclosures after the closing.

Although she was promised a fixed-rate mortgage, Defendant World Savings Bank, FSB ("World Savings") provided Ms. Poindexter with a Pick-A-Payment Adjustable Rate Mortgage Loan. The Pick-A-Payment Adjustable Rate Mortgage Loan was ill-suited to a person of Ms. Poindexter's limited financial means and did not provide her with a substantial benefit. The mortgage jeopardized her home ownership by increasing the balance on her mortgage every day and put her at risk of losing her family home of 44 years to a foreclosure sale.

In her First Amended Verified Complaint ("Amended Complaint"), Ms. Poindexter made specific and detailed allegations against the Defendants. Ms. Poindexter alleged five Counts against Defendants. Count I alleged violations of the District of Columbia Consumer Protection Procedures Act ("CPPA") regarding the unconscionable mortgage made by World Savings.[1] The mortgage was made without regard to Ms. Poindexter' ability to repay it. Count II alleged violations of the CPPA based on World Savings' misrepresentation of material facts or failure to state material facts. Count III alleged the Defendants obtained and finalized the mortgages under procedurally unconscionable circumstances. Count IX alleged World Savings violated the Truth in Lending Act. Count X alleged loan transaction was subject to Ms. Poindexter's right of rescission

In response to Ms. Poindexter's First Amended Verified Complaint, Defendants moved to dismiss Counts I, II, and II on the grounds that Ms. Poindexter's claims are subject to preemption regulations of the Office of the Comptroller ("OCC") and the Office of Thrift Supervision ("OTS"). (Mot. Dismiss 9). Defendants' argument that the state law and common law claims are expressly preempted is wrong and misleading. (Mot. Dismiss 9.) Their argument ignores pivotal characteristics of Ms. Poindexter's claims under the CPPA. The CPPA is a law

---

[1] Upon information and belief, Wachovia Mortgage, FSB is the successor to World Savings Bank, FSB. Wachovia Mortgage, FSB was merged into Wells Fargo Bank, N.A.

of general applicability—applying to all entities that do business within the District, not just lenders—that prohibits unfair and deceptive business practices.   Moreover, it represents a codification of longstanding District of Columbia common law principles prohibiting unconscionable contracts and misrepresentations by businesses.   Ms. Poindexter alleges that Defendants violated those generally applicable standards. Accordingly, Defendants cannot use preemption to avoid liability for the unconscionable and deceptive mortgage lending practices alleged in this case.

Defendants also moved to dismiss Count III on the grounds that Ms. Poindexter's unconscionability claim is not recognized.   Defendants' argument fails as this Court has allowed a plaintiff's claim of common law unconscionability and has evaluated the merits of unconscionability claims.   Accordingly, Ms. Poindexter can raise a common law claim of unconscionability.   For the reasons explain herein, Ms. Poindexter's unconsionability claim is not preempted.

Finally, Defendants argue that Ms. Poindexter failed to plead the circumstances of the alleged CPPA claims with the requisite particularity.   In particular, Defendants alleged Ms. Poindexter's claims were "saturated with generalized allegations."   (Mot. Dismiss 13). However, Ms. Poindexter's First Amended Verified Complaint alleges sufficient factual basis for her specific and recognizable legal claims.

## STATEMENT OF THE CASE

This action arises as a result of predatory and abusive mortgage lending practices which resulted in Plaintiff Susie Poindexter, a 73-year old African-American D.C. resident, being fraudulently induced to refinance her mortgage with a loan that she could not afford.

As set forth in the Plaintiff's Amended Complaint, Susie Poindexter was promised a fixed-rate mortgage on her family home of 44 years in Washington, D.C. (First Amended Verified Complaint ("Ver. Compl.") ¶ 24, 34.)  Instead, on or about June 25, 2007, Defendant World Savings extended a Pick-A-Payment Adjustable Rate Mortgage to Ms. Poindexter.[2]  (Ver. Compl. ¶ 43.)  This mortgage eroded the equity in her home. (Ver. Compl. ¶ 71.) When the mortgage rates reset, Ms. Poindexter was forced to use her retirement savings to make her payments.  (Ver. Compl. ¶ 59.)

At the time the loan was originated, Ms. Poindexter was retired from her job as a sales associate at Macy's and was receiving Social Security of less than $1,200 per month. (Ver. Compl. ¶ 53.)  Ms. Poindexter was unable to pay the monthly mortgage payments based upon her income. (Ver. Compl. ¶ 53.)

World Savings misrepresented the terms of the mortgage – which had an adjustable rate instead of the fixed rate promised to Ms. Poindexter - and failed to state material facts regarding the type of mortgage extended to Ms. Poindexter. (Ver. Compl. ¶ 94.)  World Savings failed to tell Ms. Poindexter that her monthly payments would increase to higher and unaffordable levels. World Savings failed to tell Ms. Poindexter that the principal balance on her mortgage would increase. (Ver. Compl. ¶ 77.)  Ms. Poindexter relied upon these misrepresentations and failures to state material facts when she entered into the mortgage. (Ver. Compl. ¶ 79.)

World Savings' unconscionably paid financial incentives to a broker to originate loans that worked to Ms. Poindexter's substantial detriment.  (Ver. Compl. ¶ 71.)   The broker,

---

[2] Wachovia Mortgage, FSB is the successor to World Savings Bank, FSB.  (See Wachovia Mortgage's Answer at FN 1 [Docket #21]).  Wachovia Mortgage, FSB merged into Wells Fargo Bank, N.A. (See Wachovia Mortgage's Answer at FN 1 [Docket #21]).  Wachovia Mortgage, FSB's corporate parent, Wachovia Corporation, is now a subsidiary of Wells Fargo & Company. (See Wachovia Mortgage's Answer, ¶15 [Docket #21]).  Wachovia Mortgage, FSB, formerly known as World Savings Bank, FSB is now known as Wells Fargo Bank, N.A.  (See Wachovia Mortgage's Answer, page 1 [Docket #21]).

Defendant Equitable Mortgage Group ("Equitable"), was paid a "broker fee" by the lender, World Savings, of $5,872.00.  (Ver. Compl. ¶ 50).  World Mortgage Company, a wholly owned subsidiary of World Savings[3], paid Equitable a $4,404 "mortgage broker" amount with regard to Ms. Poindexter's loan.  (Ver. Compl. ¶ 49).  In total, World Saving gave Equitable at least $10,276 to place Ms. Poindexter in the Pick-A-Payment Adjustable Rate Mortgage.[4]  The financial incentives to the broker resulted in a loan that was unwritten so that Ms. Poindexter was ultimately forced to refinance or go into default.  (Ver. Compl. ¶ 71.)  The unfavorable loan terms stripped the equity from Ms. Poindexter's home and was made by World Savings despite Defendants' knowledge that there was no reasonable expectation Ms. Poindexter would be able to repay the mortgage.  (Ver. Compl. ¶ 71, 73.)

Ms. Poindexter's financial distress and vulnerability were readily apparent to World Savings.  World Savings held the superior bargaining power against Ms. Poindexter.  The terms of the transactions were substantively and procedurally unconscionable, unreasonably favorable to World Savings, and varied grossly from market rates to the detriment of Ms. Poindexter. (Ver. Compl., ¶ 84.)

The closing on Ms. Poindexter's loan took place at a McDonald's fast food restaurant in the District of Columbia.  (Ver. Compl., ¶ 33.) Ms. Poindexter did not receive copies of any loan paperwork or the required Truth in Lending disclosures after the closing.  (Ver. Compl., ¶ 35-39.)

.

.

.

---

[3] See Defendants' Motion to Dismiss at FN 2.
[4] In addition to the fees paid by Worlds Savings, Equitable was also paid a "mortgage broker fee" of $6,222.  (Ver. Compl. ¶ 48).

# ARGUMENT

## I.        Applicable Legal Standard

In ruling on a motion to dismiss, the court must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party. *Warth v. Seldin*, 422 U.S. 490, 501 (1975).  In evaluating a Rule 12(b)(6) motion to dismiss, the court must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *Hinson ex rel. N.H. v. Merritt Educ. Ctr*, 521 F. Supp. 2d 22, 27 (D.D.C. 2007).

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests.  See *Poblete v. Indymac Bank,* 657 F.Supp.2d 86, 94 (D.D.C., 2009) (citations omitted).  In this matter, as Ms. Poindexter provided a sufficient statement of her claim, Defendants' motion should be denied.

## II.       Plaintiff's District of Columbia Consumer Protection Procedures Act and unconscionability claims are not preempted

In Counts I and II, Ms. Poindexter alleges the loan made to her violated the CPPA because the loan was unconscionable, the loan was misrepresented to her, and she was mislead about the loan.  In Count III, Ms. Poindexter raises a separate common law unconscionability claim.  Neither the National Bank Act ("NBA"), 12 U.S.C. § 1 *et seq*., nor the Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1461 *et seq.*, preempts Ms. Poindexter's claims against Defendants Wachovia Mortgage Corporation and Wachovia Mortgage, FSB.[5]

---

[5] Defendant Wells Fargo & Company, which is a bank holding company rather than a federally chartered financial institution (or a subsidiary of such an institution), does not raise a preemption defense.

a.      **The claims at issue are based on laws of general applicability derived from District of Columbia common law tort and contract principles.**

Before evaluating Defendants' argument that Counts I, II, and III are preempted, it is essential to recognize that the claims arise from common-law-like laws of general applicability. Count I and II are based upon actions that have long violated the District's common law, and Count III is a pure common law claim.

Counts I and II allege that Wells Fargo and Wachovia violated various provisions of the CPPA. The CPPA applies to a wide range of District businesses, and it "prohibit[s] a long list of unlawful trade practices, and in doing so defines its terms comprehensively in keeping with the purpose to assure that a just mechanism exists to remedy *all* improper trade practices." *DeBerry v. First Gov't Mortgage & Investors Corp.*, 743 A.2d 699, 700 (D.C. 1999) (citation and internal quotation marks omitted). Mortgage lending is just one of the many business activities that the CPPA covers. *See id.*

Among its long list of unlawful practices, the CPPA prohibits businesses from misrepresenting important facts during transactions or misleading consumers by failing to disclose important facts. *See* D.C. Code § 28-3904(a), (e), (f), (k), (u). The District's common law has long created liability for misrepresentations and failures to disclose. *See In re Estate of McKenney*, 953 A.2d 336, 341 (D.C. 2008) ("Traditionally, a person who was induced to enter into a contract by a misrepresentation has several common law causes of action, including fraud in the inducement sounding in tort and rescission sounding in contract."); *Bennett v. Kiggins*, 377 A.2d 57, 59 (D.C. 1977) ("Nondisclosure or silence, as well as active misrepresentation, may constitute [common law] fraud."). The CPPA in many respects represents a codification of this common law. *See Osbourne v. Capital City Mortgage Corp.*, 727 A.2d 322, 325-26 (D.C. 1999) (interpreting the CPPA's burden-of-proof requirements based on those for common law

misrepresentation).  Indeed, the Defendants effectively characterize Ms. Poindexter's CPPA claim as one arising from common law fraud in arguing Count II should be treated as an allegation subject to the heightened pleading standard for claims of fraud.  *See* Defendants' Memo. at 13-14 (citing Fed. R. Civ. P. 9(b)).

The CPPA also prohibits any business in the District from "mak[ing] or enforce[ing] unconscionable terms or provisions."  *Id.* § 28-3904(r).  Similarly, the common law of the District voids unconscionable contracts.  *See Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 448-49 (D.C. Cir. 1965).  Indeed, courts have previously recognized that § 28-3904(r) represents a codification of the District's common law unconscionability doctrine first articulated in *Williams*.[6]  *See Lund v. Watergate Investors Ltd. P'ship,* 728 A.2d 77, 84-85 (D.C. 1999) (interpreting the unconscionability standards listed in § 28-3904(r) of the CPPA to accord with common law on unconscionability); *see also Williams v. First Gov't Mortgage & Investors Corp.*, 225 F.3d 738, 748 (D.C. Cir. 2000) ("[A] finding of liability under either subsection (r)(1) or subsection (r)(5) [of § 28-3904] would be highly probative of common law unconscionability.").

Thus, Ms. Poindexter is invoking common-law-type tort and contract remedies of general applicability in Counts I, II, and III of her Complaint.  As will be explained below, such allegations are neither preempted when pled against a national bank nor a federal savings bank.

.

.

.

---

[6] Using words similar to the present-day CPPA, *Williams* defined unconscionability as "absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party."  350 F.2d at 449.

**b.      Federally chartered financial institutions are subject to generally applicable state laws**

Both the National Bank Act and the Home Owners' Loan Act leave a large role for state

law in regulating the conduct of federally chartered financial institutions:

> [S]tates may regulate the operations of national banks so long as the regulation is not repugnant to federal law. A state law limiting the operation of national banks is preempted by federal law and invalid under the Supremacy Clause of the Constitution only if the state law "expressly conflicts with the laws of the United States, and either frustrates the purpose of national legislation or impairs the efficiency of [national banks] to discharge the duties, for the performance of which they were created."

*Indep. Cmty. Bankers Ass'n of S.D. v. Bd. of Governors of the Fed. Reserve Sys.*, 820 F.2d 428,

436 (D.C. Cir. 1987) (citation omitted). The United States Supreme Court has explained that in

many instances state law applies to federally chartered financial institutions:

> Federally chartered banks are *subject to state laws of general application* in their daily business to the extent such laws do not conflict with the letter or the general purposes of the NBA. For example, state usury laws govern the maximum rate of interest national banks can charge on loans, *contracts made by national banks* "are governed and construed by State laws," and national banks' "acquisition and transfer of property [are] based on State law."

*Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 11 (2007) (citations omitted) (emphases added); *see*

*also Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 172 (1982) (O'Connor, J.,

concurring) ("Nothing in the language of . . . HOLA . . . remotely suggests that Congress

intended to permit the Board to displace local laws, such as tax statutes and zoning ordinances,

not directly related to savings and loan practices."). Indeed, last year the Supreme Court once

again reiterated this longstanding and continued role that state law plays in regulating federally

chartered financial institutions. *See Cuomo v. Clearing House Ass'n, L.L.C.*, 129 S. Ct. 2710,

2717-18, 2720 (2009) ("No one denies that the National Bank Act leaves in place some state

substantive laws affecting banks. . . . States . . . have always enforced their general laws against national banks.").[7]

Under these standards articulated by the D.C. Circuit and the Supreme Court, Counts I, II, and III of Ms. Poindexter's Complaint are not preempted: her claims of unconscionability, misrepresentations, and receiving misleading information are neither repugnant to nor conflicting with federal law.  Indeed, as a federal court examining claims against a national bank quite similar to those contained in Ms. Poindexter's Complaint held, "[n]o federal law permits a national bank to misrepresent to borrowers the nature of its charges.  Such conduct, therefore, may be regulated by state law. . . ." *Watkins v. Wells Fargo Home Mortgage*, 631 F. Supp. 2d 776, 787 (S.D. W. Va. 2008).  Similarly, federal banking regulations "neither authorize[] a national bank to make a loan that it knows the borrower cannot repay, and certainly not to keep that information from the borrower.  Thus [an unconscionability] claim [based on making loans with a known inability to repay] is not preempted." *Id*. at 786; *see also Perdue v. Crocker Nat'l Bank*, 702 P.2d 503, 524 (Cal. 1985) (holding California's codified unconscionability doctrine is not preempted when applied to federally chartered financial institutions).

Therefore, the Defendants paint an inaccurate picture of national banks and federal savings banks entirely exempted from state consumer protection laws.  *See* Defendants' Memo. at 7 ("HOLA preempts allegations based on state consumer protection law.").  To the contrary, "[n]umerous courts . . . have concluded that claims brought under state laws of general application, which merely require all businesses (including banks) to refrain from fraud and misrepresentations do not impair a bank's ability to exercise its lending powers and only incidentally affect the exercise of a national bank's powers." *Young v. Wells Fargo & Co.*, __ F.

---

[7] One federal district court recently noted that "*Cuomo* . . . has dispelled the popular notion that all state laws that affect national banks in any way or to any degree are preempted." *Mwantembe v. TD Bank, N.A.*, __ F. Supp. 2d __, 2009 WL 3818745, at *3 (E.D. Pa. Nov. 17, 2009).

Supp. 2d __, 2009 WL 3450988, at *9 (S.D. Iowa Oct. 27, 2009) (internal quotation marks and brackets omitted).   In other words, as Judge Posner has explained, federal banking law preemption "does not deprive persons harmed by the wrongful acts of savings and loan associations of their basic state common-law-type remedies." *In re Ocwen Loan Servicing, LLC Mortgage Servicing Litig.*, 491 F.3d 638, 643 (7th Cir. 2007).   As explained in section I.A, *supra*, Ms. Poindexter's claims are squarely within the category of generally applicable duties imposed on District businesses through a codification of basic state common-law-type remedies. Therefore, they are not preempted.

Moreover, it is only logical that federally chartered financial institutions are subject to many state laws, like those Ms. Poindexter alleges the Defendants violated, because otherwise these institutions would be able to treat their customers in any manner they deemed fit without repercussions.  *See id.* (noting federal banking regulators do not adjudicate individual customer disputes and there is no private right of action under federal banking law for unfair conduct). Judge Posner has aptly explained the absurdity of broadly exempting federally chartered financial institutions from consumer protection laws:

> Suppose an S & L signs a mortgage agreement with a homeowner that specifies an annual interest rate of 6 percent and a year later bills the homeowner at a rate of 10 percent and when the homeowner refuses to pay institutes foreclosure proceedings.  It would be surprising for [preemption] to forbid the homeowner's state to give the homeowner a defense based on the mortgagee's breach of contract.  Or if the mortgagee . . . fraudulently represents to the mortgagor that it will forgive a default, and then forecloses, it would be surprising for a federal regulation to bar a suit for fraud.

*Id*. at 643-44.  The Defendants' argument that they should be exempted from liability under the CPPA for making an unconscionable loan and making misrepresentations and providing misleading information to a borrower would create just such absurdity.  The California Supreme Court has aptly described a bank's argument that state unconscionability is preempted as "really

asking for a market free of those restraints against oppression and overreaching applicable to all other commercial operations." *Purdue*, 702 P.2d at 524-25.  This Court should agree with the California Supreme Court that such a preemption argument must be rejected because there is "no indication that Congress envisioned not only a free and competitive market, but one freer than any other market." *Id*. at 525.

c.    **Plaintiff's claims are recognized as allowed by the OTS' and the OCC's regulations**

Both the Office of Thrift Supervision ("OTS") and the Office of the Comptroller of the Currency ("OCC") have promulgated regulations putting their gloss on the preemption caselaw that applies to the institutions they charter.[8]  Despite the Defendants' singular focus on the portion of the regulations that explain that some state laws are preempted,[9] these regulations also recognize a continued role for state law—like the law at issue in this case.

1.    **Plaintiff's claims against Wachovia Mortgage, FSB are permitted by the OTS' regulations**

The state law claims pled against Wachovia Mortgage, FSB in Counts I, II, and III are types of state law claims explicitly not preempted by OTS regulations.  Although ignored by the Defendants in their Motion to Dismiss, the OTS' preemption regulation specifically states that "[s]tate laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations . . .  (1) Contract and commercial

---

[8] No decision in this Circuit addresses the effect courts are to give to these regulations.  The Supreme Court's recent *Cuomo* decision demonstrates that the federal bank regulators' views related to preemption are not always due deference.  *See* 129 S. Ct. 2715 (holding the OCC's regulation on states' visitorial powers was not a reasonable statutory interpretation).

[9] The Defendants argue the claims against Wachovia Mortgage Corporation, as a subsidiary of Wachovia Bank, N.A., are preempted by the NBA.  *See* Defendants' Memo. at 6.  They further argue that claims against Wachovia Mortgage, FSB are preempted by the HOLA.  *See id*.  Although the Defendants assert that Wachovia Mortgage, FSB has been merger into Wells Fargo Bank, N.A., this merger occurred after the conduct at issue in this case.  Accordingly, the Defendants correctly do not argue this merger affects the preemption analysis.

law; . . . (4) tort law."   12 C.F.R. § 560.2(c).   Consistent with the discussion in Section B, *supra*, Judge Posner has interpreted "subsection (c) to mean that OTS's assertion of plenary regulatory authority does not deprive persons harmed by the wrongful acts of savings and loan associations of their basic state common-law-type remedies." *In re Ocwen*, 491 F.3d at 643; *see also McAnaney v. Astoria Fin. Corp.*, __ F. Supp. 2d __, 2009 WL 3150430, at *23 (E.D.N.Y. Sept. 29, 2009) (holding a claim under New York's consumer protection statute, similar to the CPPA, came within the § 560.2(c) limits on preemption); *Binetti v. Wash. Mut. Bank*, 446 F. Supp. 2d 217, 220-21 (S.D.N.Y. 2006) (same).   As already explained, Ms. Poindexter's raises exactly that kind of claim.

The OTS itself has declared that a state's deceptive practices statute, like the CPPA, only incidentally affected lending because "nothing in federal law preempts general deceptive acts statutes" and federal law does not condone fraud and unfairness.   Opinion of OTS Chief Counsel, 1996 WL 767462 (Dec. 24, 1996).   The opinion presumed that federal savings banks interact with borrowers in a truthful manner, and therefore a "general prohibition on deception should have no measurable impact on their lending operations." *Id.*; *see also Reyes v. Downey Savings & Loan Ass'n, F.A.*, 541 F. Supp. 2d 1108, 1114 (C.D. Cal. 2008) (holding OTS regulations support an interpretation that "when plaintiffs rely on a state law of general application, and the application of the law does not purport to specifically regulate lending activity, the state law is not preempted"); *Kajitani v. Downey Savings & Loan Ass'n, F.A.*, 647 F. Supp. 2d 1208, 1220 (D. Haw. 2008) (concluding that claims regarding bait and switch tactics and misrepresentation were not preempted by HOLA under a Hawaii statute that provided "unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful") ; *cf. Merrill Lynch Mortgage Capital, Inc. v. Fed. Deposit Ins. Corp.*, 293 F. Supp. 2d 98, 105

(D.D.C. 2003) (holding OTS preemption regulations on deposits did not apply to state contract law).   Accordingly, Ms. Poindexter's claims against Wachovia Mortgage, F.S.B. are not preempted.

> 2.      **Plaintiff's claims against Wachovia Mortgage Corporation are permitted by the OCC's regulation**

Like the OTS, the OCC specifies in its preemption regulations that "[s]tate laws on the following subjects are not inconsistent with the real estate lending powers of national banks and apply to national banks to the extent that they only incidentally affect the exercise of national banks' real estate lending powers: (1) Contracts; . . .(2) Torts; . . ."   12 C.F.R. § 34.4(b).   This provision applies to state consumer protection laws like the CPPA.   *See Young*, 2009 WL 3450988, at *9 ("As § 34.4 indicates, the presumption is that a claim brought under state tort law, and by extension, under general state consumer protection statutes, will not be preempted unless the Court has reason to conclude the claim will have more than an incidental effect on the exercise of the national bank's real estate lending powers.").   Furthermore, the OCC has declared that state laws "that prohibit unfair or deceptive acts or practices" such as the CPPA "may be applicable to insured depository institutions."   OCC Advisory Letter, Guidance on Unfair or Deceptive Acts or Practices, AL 2002-3, 2002 WL 521380 at *2 n.2 (Mar. 22, 2002); *see also Watkins*, 631 F. Supp. 2d at 786-87 (holding various unconscionability and fraud claims based on a national bank's mortgage origination were not preempted by the OCC's regulations); *Jefferson v. Chase Home Finance*, No. C 06-6510, 2008 WL 1883484, at *10 (N.D. Cal. Apr. 29, 2008) (concluding claims under California consumer protection statue that "merely require all businesses (including banks) to refrain from misrepresentations and abide by contracts and representations to customers" were not preempted by the OCC's regulation preemption

regulations).  Accordingly, claims against Wachovia Mortgage Corporation based upon a law of general application, such as the claims raised by Ms. Poindexter, are not preempted.

**d.     Plaintiff's claims are similar to those District of Columbia courts have held are not preempted**

The conclusion that Ms. Poindexter's claims are not preempted is also confirmed by the previous holding of the District of Columbia courts that claims under CPPA, including unconscionability, are not preempted by the OTS and OCC regulations.  *JP Morgan v. Harris*, No. 08ca3167R(RP) (D.C. Super. Sept. 18, 2008); *Homecomings Fin. Network v. Sprow*, No.00ca7177 (D.C. Super. Apr. 19, 2001); *see also Washkoviah v. Student Loan Mktg. Ass'n*, 849 A.2d 37, 38-39 (D.C. 2004) (allowing the amendment of a complaint to include the claim that a lender's misrepresentation violated the CPPA and was not preempted by federal law that prohibited a state from regulating loan disclosures).

*Harris* specifically addressed the "consumer protection-uniform banking policy conflict" in determining whether the CPPA applied to national banks for their mortgage lending activities. Slip at 7.   The court observed that "laws dealing with general business practices—fraud, misrepresentation,  and  unconscionability—have  been  upheld"  against  national  banks' preemption challenges.  *Id*.  The court explained that under the CPPA:

> All  businesses  must  conduct  their  operations  absent  of  fraud  and misrepresentations.  All business may not enter into unconscionable contacts.  To exempt national banks from these basic principles would produce a strange result. It is repugnant to the basic principles of federalism, moreover, to entirely destroy a  state's  ability  to  regulate  a  business  committing  fraud  or  misrepresentation within its borders.

*Id*. at 8.  Accordingly, it held that the plaintiff's CPPA was not preempted because "[n]ational banks can still operate uniformly; they simply must operate without fraud, misrepresentations,

and unconscionability in the District of Columbia." *Id.* at 9.  Such reasoning applies equally to this case.

Similarly, in *Homecomings*, like here, the claim was not that any specific term of the loan violated District law, but rather that the loan was unconscionable under the CPPA because: (1) the lender had knowledge of no reasonable probability of payment in full; (2) the customer was unable to receive substantial benefits; and (3) the lender had knowingly taken advantage of the consumer's inability to protect her interest (all indicia of unconscionability from § 28-3904(r)). Slip at 4.  The Court explained that the unconscionability allegations under the CPPA were the type of contract or common law claim not preempted by HOLA because "the law does not regulate terms of the contracts themselves, but only the knowing use of such terms to take advantage of a person incompetent to understand the terms." *Id.* at 10.

The cases cited by Defendant banks are either inapposite or unpersuasive.  Several of the cases, including the only case cited from this Circuit, are inapposite because they dealt with preemption challenges to laws that specifically targeted the conduct of banks rather than imposing standards for unlawful conduct generally applicable to all businesses.  *See State Farm Bank, F.S.B. v. Dist. of Columbia*, 640 F. Supp. 2d 17 (D.D.C. 2009) (holding the District's licensing system specific to mortgage lenders was preempted when applied to independent contractors of a federally chartered thrift); *Wells Fargo Bank of Texas, N.A. v. James*, 321 F.3d 488 (5th Cir. 2003) (holding a Texas law that specifically limited check cashing fees was preempted when applied to a federally chartered bank).  In several of the other cases the Defendants cite, the plaintiffs were attempting to use generally applicable consumer protection law to impose particular disclosure duties on lenders.  *See Mwantembe*, 2009 WL 3818745, at *7 n.19 (distinguishing *Fultz v. World Savings and Loan Assoc.* because it involved the use of a

generally applicable laws to "require particular disclosures that the OCC had deemed off limits to national banks" and *Rose v. Chase Bank, N.A.* because it "was predicated on the violation of a specific California disclosure law that conflicted with an OCC regulation").

Accordingly, Counts I, II and III are not preempted against defendants Wachovia Mortgage Corporation and Wachovia Mortgage, FSB.

III.   **Plaintiff's claims against Wachovia Mortgage Corporation**

Ms. Poindexter concedes that due to the complex corporate relationships between various Wells Fargo and Wachovia subsidiaries, successors, or other entities arising out of mergers, the designation of Wachovia Mortgage Company in this matter was limited to paragraph 17 and the caption of the First Amended Verified Complaint.  Plaintiff respectfully concedes that Wachovia Mortgage Corporation be dismissed without prejudice.

IV.   **Plaintiff's claims against Wells Fargo & Company**

For Defendants to allege that Plaintiff improperly identified the parties in this case is contrary to statements regarding the relationship between the various Wells Fargo and Wachovia subsidiaries, successors, or other entities arising out of mergers, made by related defendants[10] in a separate and unrelated case.  In that case, Wells Fargo Bank, N.A., an entity related to present defendant Wells Fargo & Company, stated that "[O]n December 31, 2008, Wells Fargo & Company (the parent company for Wells Fargo Bank, N.A.), acquired *certain assets* of the former Wachovia Corporation, including one of its subsidiaries, Wachovia Mortgage, FSB."[11]

---

[10] The related defendants in the separate case were represented by same defense counsel.
[11] See Defendants Memorandum of Law in Support of Motion for Summary Judgment at footnote 1 in *Poindexter v. Wells Fargo Bank, N.A., et al.* at Case No. 1:09-CV-01061-JR.  Pope & Hughes were counsel for Wells Fargo Bank, N.A. and Wachovia Mortgage, FSB f/k/a World Savings Bank

(*italics added*). In this matter, Plaintiff alleged same in her Complaint. (Am. Compl., ¶ 15.) Defendants claim that Wells Fargo & Company is "only alleged to be the parent company of Wells Fargo, N.A. and to Wachovia Mortgage, FSB." (Mot to Dismiss, 12). However, Wells Fargo & Company acquired certain assets from Wachovia Mortgage, the successor to World Savings Bank and upon the information available to Plaintiff is therefore properly named as a defendant in the present case and its motion to dismiss should be denied. [12]

In the alternative, if this Court grants Defendants' motion to dismiss Wells Fargo & Company from Counts I – V, Plaintiff respectfully requests that the Defendant be dismissed without prejudice.

## V.        Unconscionability" is a valid cause of action.

In addition to her CPPA claims for unconscionability, Ms. Poindexter alleges a separate common law unconscionability claim against all Defendants.   This Court has held that a borrower can raise a common law unconscionability claim. *Williams v. First Gov't Mortg. and Investors Corp.*, 974 F. Supp. 17, 19 (D.D.C. 1997).   In evaluating a claim of common law unconscionability[13], this Court has considered whether a borrower had a meaningful choice of whether to enter into a mortgage loan agreement, and whether the terms of the agreement unreasonably favored the lender. *Id.* (holding that the plaintiff had not met his burden of proving that he had no meaningful choice of whether to enter into the contract); *Duren v. First Gov't*

---

[12] Through the discovery process, Plaintiff will seek to further determine the relationship between Wells Fargo & Company, Wells Fargo Bank, N.A., Wachovia Corporation, and Wachovia Mortgage, FSB.  Additionally, Plaintiff will seek discovery regarding the securitization of the loan, if any, to determine whether all necessary parties have been joined in this action and the assets acquired by Wells Fargo & Company.

[13] In the District of Columbia, the Court of Appeals held that the "purpose of the unconscionability doctrine is to prevent oppression and unfair surprise.  Thus a contract may be unconscionable either because of the manner in which it was made or because of the substantive terms of the contract or, more frequently, because of a combination of both. These two elements are often referred to as procedural unconscionability and substantive unconscionability." *Urban Investments, Inc. v. Branham*, 464 A.2d 93, 99 (D.C. 1983) (citation and internal quotation marks omitted).

*Mortg. and Investors Corp.*, 2000 WL 816042, 3 (C.A.D.C. 2000) (noting that this Court set aside the jury's finding of common law unconscionability on the ground that the plaintiff "failed to establish the requisite elements of that offense."). Most recently, in April 2008 this Court again evaluated the merits of a plaintiff's common law claim that a loan was unconscionable. *Ellipso, Inc. v. Mann*, 541 F. Supp. 2d 365 (D.D.C. 2008) (concluding that the loan was not unconscionable on its face). Thus, the holdings in *Williams*, *Duren*, and *Ellipso* defeat Defendants' argument that unconscionability is not recognized as a cause of action. Ms. Poindexter can raise a common law claim of unconscionability. *See also, Eva v. Midwest National Mortgage Banc*, 143 F. Supp. 2d 862, 894-5 (N.D. Ohio 2001)(unconscionability may be an affirmative claim).

For the same reasons that her DC CPPA claims would not be preempted, as explained in detail in Section II above, Ms. Poindexter's unconscionability claim would not be preempted. The terms of the mortgage contract at issue falls within the plain language of the contract exceptions in the OCC and OTS regulation. 12 C.F.R. § 560.2(c) and 12 C.F.R. § 34.4(b). Thus, Ms. Poindexter's unconscionability claim in Count III is not preempted by federal law.


**VI.**     <u>**Plaintiff pled the circumstance of her CPPA claim with requisite particularity**</u>

This Court recently ruled that fraud claims, not pled with particularity as to time, place and manner, would be dismissed without prejudice while at the same time sustaining a plaintiff's CPPA claims. *Poblete v. Indymac Bank*, 657 F.Supp.2d 86, 95 (D.D.C.,2009). In this matter, Defendants seek to impose a common law fraud standard of pleading notwithstanding the absence of a common law fraud claim in Ms. Poindexter's Amended Complaint. Ms. Poindexter alleged specific violations of the CPPA. In response, Defendants allege Fed. R. Civ. P. 9(b)

applied to all of Ms. Poindexter's CPPA claims.  In support of their argument, Defendants relied upon a case involving a violation of a federal statute not pled in this matter, rather than the CPPA.  *U.S. ex rel. Williams v. Martin-Baker Aircraft Co., Ltd.,* 389 F.3d 1251(C.A.D.C. 2004). When the Defendants focused on a case involving the CPPA, they broadly interpreted the application of *Alicke v. MCI Communications Corp.*, 111 F.3d 909 (D.C. Cir. 1997).  However, the *Alicke* Court ruled that a dismissal was warranted because the plaintiff failed to "allege that the defendant made a material misrepresentation or omission that has a tendency to mislead," a requirement under the relevant section of the CPPA.  *Alicke,* 111 F.3d at 912.  In this matter, Ms. Poindexter alleged World Savings made misrepresentations regarding the loan that misled her, including the expected benefit she would receive from the mortgage and the effects of the Pick-A-Payment loan on her equity.  The violations of the CPPA are detailed below.

### a.      CPPA Claims were well-pled.

Defendants' argument that Ms. Poindexter's claims failed to identify misrepresentations is unsupported. Ms. Poindexter brought CPPA claims against Defendants under several different subsections, namely, §28-3904(e), (f), (q), and (r) supporting each of these unlawful trade practice allegations by a short, plain statement of the claim describing World Savings' misconduct.[14]   Ms. Poindexter pled with sufficient particularity regarding World Saving providing Ms. Poindexter an unfavorable mortgage on or about June 25, 2007 at a McDonald's restaurant.  Defendants argued that Ms. Poindexter failed to identify the role of Defendants in the Fraud.  Ms. Poindexter alleged that World Mortgage Company mailed her mortgage paper work regarding the Pick-a-Payment Loan on June 11, 2007. (Am. Compl. at 32). Ms. Poindexter

---

[14] Plaintiff concedes that §28-3904(a), (k) and (u) are applicable to the allegations against Defendant Equitable rather than World Savings, notwithstanding World Savings paying financial incentives to Equitable to place Ms. Poindexter in an adjustable rate mortgage.  (Am. Compl. 71).

further alleged that the mortgage product was provided by World Savings. (Am. Compl. at 62). The World Saving refinance closed on June 25, 2007. (Am. Compl. at 34). World Savings made misrepresentations to Ms. Poindexter in their loan paperwork regarding the mortgage product and the impact on her equity in June 2007. (Am. Compl. at 77).

Subsections (e) and (f) require allegations of: (1) the failure to disclose a material fact or the misrepresentation of a material fact; (2) which would tend to mislead. D.C.Code § 28-3904(e)-(f). *See, e.g., Calvetti v. Antcliff*, 346 F.Supp.2d 92, 105 (D.D.C.,2004). Here, Ms. Poindexter's verified allegations include that World Savings misrepresented material facts about the World Savings' mortgage product. (Am. Compl. at 77 (c), (e) and (f)). World Savings alleged Ms. Poindexter would receive a benefit from the loan. (Am. Compl. at 76). World Savings misrepresented the negative impact of the adjustable rate mortgage on her principal. (Am. Compl. 77). These misrepresentations and omissions about the nature of the mortgage loan, an adjustable rate product that eroded the equity in her home rather than a fixed rate, are statements or omissions that misled Ms. Poindexter. (Am. Compl. at 79). Worlds Saving paid financial incentives to Equitable to place her in an adjustable rate mortgage when she was promised a fixed rate. (Am. Compl. at 49-51, 58). She was placed in a loan that eroded the equity in her home. (Am. Compl. at 71). Further, she could not afford to make the payments when the adjustable rate mortgage reset and was forced to use her retirement savings. (Am. Compl. at 59).

To state a claim under subsection (q), the plaintiff must plead that Defendants "fail[ed] to supply to a consumer a copy of a sales or service contract, lease, promissory note, trust agreement, or other evidence of indebtedness which the consumer may execute." D.C.Code §

28-3904(q).  Ms. Poindexter made verified allegations that World Savings failed to provide her with a copy of the loan paperwork, including the required disclosures.  (Am. Compl. at 35-39)

Subsection (r) required Ms. Poindexter to plead that World Savings provided a loan under unconscionable terms.  Ms. Poindexter's verified allegations and the supporting documents support her claims that World Savings knew that at the time credit sales were consummated that there was no reasonable probability of payment in full, that at the time of the credit sales that Ms. Poindexter would be unable to receive substantial benefits from the loans, and that World Savings knowingly took advantage of Ms. Poindexter's inability to reasonably to protect her interests by reasons of age, physical or mental infirmities, ignorance, illiteracy, or inability to understand the language of the agreement.  *See* D.C.Code § 28-3904(r)(1),(2), and (5).  Ms. Poindexter' verified allegations include that Worlds Savings knew she would be unable to pay under the terms of the loans provided to her, that the loans were provided without regard to her ability to pay, and that Ms. Poindexter provided documentation showing her actual income, assets, and savings when she applied for the loans.  (Am. Compl. at 69, 76).  Ms. Poindexter also pled that World Savings issued her a mortgage from which she could not derive substantial benefits.  In particular, Ms. Poindexter had to pay broker fees, closing costs, and other fees that diminished the value of the loan, while stripping substantial equity from her home.  (Am. Compl. at 47-50, 76).  Ms. Poindexter also pled that World Savings knowingly took advantage of her age, infirmities, and lack of sophistication.  (Am. Compl. at 76).  Consequently, Ms. Poindexter has adequately pled a violation of §3904(r).

.

.

**b.      In the alternative, Plaintiff meets Fed. R. Civ. P. 9(b) requirements.**

Fed.R.Civ.P. 9(b) requires that a pleader state with particularity the circumstances constituting fraud or mistake. Fed.R.Civ.P. 9(b).  Rule 9(b) is "chiefly concerned with the elements of fraud, the circumstances that the claimant must plead with particularity include matters such as the time, place, and content of the false misrepresentations, the misrepresented fact, and what the opponent retained or the claimant lost as a consequence of the alleged fraud." *Chelsea Condominium Unit Owners Ass'n v. 1815 A. St., Condominium Group, LLC*, 468 F.Supp.2d 136, 146 (D.D.C. 2007).  Rule 9(b) requires that the pleader provide the "who, what, when, where, and how" with respect to the circumstances of the fraud.  *Id*. at 146.

Defendants argue that Ms. Poindexter failed to plead the circumstances of the alleged CPPA claims with the requisite particularity. However, the Amended Complaint alleges a great many facts with sufficient specificity.  These facts tell the story of what happened to Ms. Poindexter, a retired 73 year old African American widow who was provided with a mortgage from Worlds Saving in June 2007 that was clearly ill-suited for her. The Amended Complaint pled the "who", "when", and "where" in describing the closing of the World Savings loan at the McDonalds on June 25, 2007.  (Am. Compl. 34).  The "what" and "how" of the fraud is the many misrepresentations made by World Savings in underwriting and originating loans with abusive and unfavorable terms and in paying financial incentives to Equitable to place Ms. Poindexter in the adjustable rate mortgage rather than the fixed rate as promised. (Am. Compl. 49-51, 77).  Further, World Savings failed to provide Ms. Poindexter with any of the loan documents from the closing at the McDonald's restaurant.  (Am. Compl. 35-39).

The "what" and "how" of the fraud further includes allegations that World Savings paid Equitable financial incentives to originate loans which did not provide Ms. Poindexter with a substantial benefit but that made it financially advantageous for the broker to originate the loan, including a negatively amortizing loan. (Am. Compl 49-51, 71). The loan had high closing costs totaling $10,022.   (Am. Compl   47). The documents provided by Ms. Poindexter to World Savings showed she was on a fixed income and unable to repay the loan.  (Am. Compl. 30, 53).

In sum, despite Defendants protestations to the contrary, Ms. Poindexter has met the requirements of pleading CPPA violations.   Additionally, Ms. Poindexter met the pleading standing for fraud and sufficiently alleged the "who, what, when, where and how" of the CPPA violations to satisfy the requirements of Rule 9(b).   However, should the Court find that the Amended Complaint does not meet the F.R. Civ. 9(b) standards, Plaintiff respectfully requests that the Court grant her leave to amend to cure any deficiencies, as the failure to plead fraud with particularity does not support a dismissal with prejudice. *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C.Cir.1996)("leave to amend is 'almost always' allowed to cure deficiencies in pleading fraud.").

## **CONCLUSION**

For the foregoing reasons, plaintiff Susie Poindexter respectfully requests that this Court deny Defendants' Motion to Dismiss, together with such other relief favoring Ms. Poindexter as this Court deems proper.


Dated: February 8, 2010

Respectfully submitted,

/s/ Amy R. Mix_____
Amy R. Mix (#483483)
Kerry M. Diggin (D.C. Bar # 983085) (Pursuant to
LCvR 83.2(g))
Legal Counsel for the Elderly
601 E Street, NW
Washington, DC 20049
Telephone (202)434-2171
Facsimile (202)434-6464
amix@aarp.org
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of February 2010 a copy of the foregoing
*PLAINTIFF'S OPPOSITION TO DEFENDANTS' WACHOVIA MORTGAGE CORPORATION,
WELLS FARGO BANK, N.A., F/K/A WACHOVIA MORTGAGE FSB (AND F/K/A WORLD
SAVINGS BANK, FSB) AND WELLS FARGO & COMPANY MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT* was served via this Court's CM/ECF system on all
counsel of record:

Virginia W. Barnhart
TREANOR POPE & HUGHES
29 W. Susquehanna Avenue
Suite 110
Towson, MD 21204
(410) 494-7777, ext. 215
(410) 494-1658 (fax)
*Attorneys for Wells Fargo & Co., Wachovia Mortgage Corp. and
Wachovia Mortgage, FSB f/k/a World Savings
Bank, FSB*

/s/ Amy R. Mix_____
Amy R. Mix