SUMMARY MEMORANDUM OPINION; NOT INTENDED FOR PUBLICATION IN THE OFFICIAL REPORTERS

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SUSIE M. POINDEXTER,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 1:9-cv-1392 (RLW) |
| ) | |
| **WACHOVIA MORTGAGE** ) | |
| **CORPORATION, et al.,** ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| ) | |

**MEMORANDUM OPINION** [1]

Presently before the court is a Motion to Dismiss filed by defendants Wachovia Mortgage Corporation, Wachovia Mortgage FSB (f/k/a World Savings Bank, FSB and now known as Wells Fargo Bank, N.A.), and Wells Fargo & Company. (Doc. 22.) For the reasons explained below, the Court finds that Defendants' motion is due to be granted in part and denied in part.

**I. STANDARD OF REVIEW**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556

---

[1] This is a summary opinion intended for the parties and those persons familiar with the facts and arguments set forth in the pleadings; not intended for publication in the official reporters.

U.S. 662, ___, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  However, in evaluating a Rule 12(b)(6) motion, the court liberally construes the complaint in favor of the non-moving party and grants all reasonable inferences to the nonmovant that can be derived from the facts alleged in the complaint.  *See Stokes v. Cross*, 327 F.3d 1210, 1215 (D.C. Cir. 2003).

## II. FACTS

As alleged in the Amended Complaint, the facts are as follows: Plaintiff Susie Poindexter is a 73 year old Washington, D.C. homeowner who claims she was fraudulently induced to refinance her mortgage with a loan she could not afford.  (Doc. 19, Amend. Comp. ¶¶ 1,11.) Plaintiff asserts that Defendant Equitable Mortgage Company contacted her via telephone and offered her a fixed-rate mortgage with low monthly payments.  (Id. ¶ 27.)  Sometime thereafter, World Mortgage Company mailed Plaintiff her loan documents.[2]

Ultimately, Plaintiff obtained a "Pick-A-Payment Adjustable Rate Mortgage Loan," that she could not financially maintain: she was a retired Macy's Department Store sales clerk and the loan had the effect of increasing her loan balance.  (*Id*. ¶¶ 4, 25, 32, 43.)  According to Plaintiff, she did not become aware of the adjustable rate until she started receiving mortgage statements. (*Id*. ¶ 58.)

---

[2] World Mortgage Company is a wholly owned subsidiary of World Savings Bank, FSB. World Mortgage brokered loans to World Savings and its affiliates.  Both World Mortgage and World Savings were wholly owned subsidiaries of Wachovia Corporation.  (Doc. 22-1, Defs.' Br. at n.2.)

SUMMARY MEMORANDUM OPINION; NOT INTENDED FOR PUBLICATION IN THE OFFICIAL REPORTERS

The loan closing was held at a McDonald's restaurant on or about June 25, 2007 and Plaintiff did not receive any closing documents, including Truth-in-Lending Act disclosures, until several months after she initiated the current lawsuit on July 28, 2009. (*Id*. ¶¶ 1-3, 35-40.) The loan documents indicate that the loan closing took place at the offices of defendant Chase Title in Maryland and the documents appear to have been notarized by a Maryland notary, who Plaintiff believes is not licensed in the District of Columbia. (*Id*. ¶¶ 44, 54-55.) Although she was collecting social security, the documents listed Plaintiff's monthly income as $7,000, when she actually received less than $1,200 per month in benefits. (*Id*. ¶¶ 52-53, 28.) Finally, Plaintiff alleges she was charged unreasonably high fees in excess of $10,00 for the loan. (Id. ¶¶ 46-50.) Wachovia Mortgage, FSB (f/k/a World Savings Bank, FSB and now known as Wells Fargo & Company) is the holder of the note. (*See* Doc. 23, Ans ¶ 14; Doc. 22, Defs.' Mot. to Dismiss at p. 1.)

It appears that after Plaintiff received the loan documents, Plaintiff sent a rescission letter to World Savings, Wachovia and Wells Fargo, with no success. (*Id*. ¶¶ 63-64.) In her amended complaint, she names the following defendants: Equitable Mortgage Group, Incorporated;[3] Chase Title, Incorporated;[4] Wachovia Mortgage Corporation; Wachovia Mortgage FSB (f/k/a World Savings Bank, FSB); and Wells Fargo & Company. (Doc. 19, Amend. Compl.) Plaintiff asserts

---

[3] Equitable never responded to the complaint and default was entered against it on August 16, 2011. (Doc. 47.)

[4] Chase Title filed an answer to the amended complaint on December 20, 2010, (Doc. 34), but counsel for Chase was allowed to withdraw on May 31, 2011. (Doc. 43.) Afterward, Chase failed to retain counsel or respond to the Court's orders and default was entered against the company on November 8, 2011. (*See* Doc. 46, 48, 50, 53; 9/28/11 ECF Minute Entry.)

claims pursuant to the Truth-in-Lending Act ("TILA") 15 U.S.C. § 1601, *et seq.*, as well as a common law claim for unconscionability and numerous claims under the District of Columbia Consumer Protection Procedures Act ("CPPA"). D.C. Code § 28-3901, *et seq.* [5]

### III. ANALYSIS

**A.   WACHOVIA MORTGAGE CORPORATION**

Wachovia Mortgage Corporation ("WMC") contends that Plaintiff has failed to allege any wrongdoing on it its part and, therefore, the claims asserted against it should be dismissed, with prejudice. (Doc. 26, Reply at 2.) Plaintiff agrees that her claims against WMC should be dismissed; she only listed WMC in a single paragraph of her complaint, regarding alleged corporate relationships between the defendants. (Doc. 26, Pl.'s Resp. at 17; Amend. Compl. ¶ 17.) However, Plaintiff requests dismissal without prejudice and her request will be granted. [6]

**B.   WELLS FARGO & COMPANY** [7]

Wells Fargo & Company ("WFC") contends it should be dismissed inasmuch as Plaintiff

---

[5] Plaintiff also asserts a claim under the District of Columbia Mortgage Lender Broker Act ("MLBA"), D.C. Code § 26-1101, *et seq.*, but that claim is not relevant to the present Motion to Dismiss.

[6] WMC also raised a preemption argument relying on the National Bank Act ("NBA"), 12 U.S.C. § 1, *et seq.* and regulations promulgated by the Office of the Comptroller of the Currency ("OCC"). Inasmuch as WMC was the only defendant "banking" institution, the Court will turn its analysis to the preemption arguments raised with respect to the "savings" institutions.

[7] Defendant WFC is a separate entity from Wells Fargo Bank, NA, (Doc. 22, Defs.' Mot. to Dismiss at n. 3), which has not been named as a defendant in this action.

SUMMARY MEMORANDUM OPINION; NOT INTENDED FOR PUBLICATION IN THE OFFICIAL REPORTERS

fails to allege any viable claims against it.  Moreover, as a <u>bank</u> holding company, WFC argues that it could not have originated or held her loan.  (Doc. 22-1, Def.'s Br. at 11-12; Doc. 27, Wells Fargo & Co. Reply at 1-2.)  Plaintiff responds that the corporate structure of these entities has not yet been sorted out and she points out WFC's admission that it is the parent corporation of Wachovia Mortgage FSB (successor to World Savings Bank).  In its reply brief, WFC responds that it could only be held liable in this case if this Court were to pierce the corporate veil and doing so would be inappropriate because there is no allegation in the complaint that WFC abused the corporate form by "perpetrat[ing] a fraud through a corporate sham," or exert[ing] undue influence over Wachovia Mortgage FSB.  (Doc. 27, WFC Reply at 2-3) (citing *Estates of Amore v. Accor*, 529 F. Supp.2d 85, 93 (D.D.C. 2008).

At this early stage of the litigation and prior to completion of discovery, the Court is not willing to dismiss WFC given its admitted relationship with Wachovia FSB.

C.  **WACHOVIA MORTGAGE FSB**

Wachovia Mortgage FSB ("Wachovia FSB") [8] argues that Plaintiff's claims are preempted by the Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1461, *et seq*. and the regulations promulgated by the Office of Thrift Supervision ("OTS").  Alternatively, Wachovia FSB argues that Plaintiff's unconscionability claim is not actionable to the extent she seeks

---

[8]  For ease of reference, the Court will refer to both Wachovia Mortgage FSB and World Savings Bank FSB collectively as Wachovia FSB, unless otherwise necessary to avoid confusion.

SUMMARY MEMORANDUM OPINION; NOT INTENDED FOR PUBLICATION IN THE OFFICIAL REPORTERS

damages.  Finally, Defendant argues Plaintiff has failed to plead her fraud claims with particularity.  *See* Fed. R. Civ. P. 9(b).

     1.    <u>HOLA Statutory and Regulatory Framework</u>

HOLA is "a product of the Great Depression of the 1930's." *Fidelity Federal Sav. and Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 159 (1982) (citation to legislative history omitted).  The statute "was intended to provide emergency relief with respect to home mortgage indebtedness at a time when as many as half of all home loans in the country were in default."  *Id*. (citations and internal quotation marks omitted).  To that end, the statute specifically allows federal savings institutions to make mortgage or residential loans.  12 U.S.C. § 1464(c)(1)(b).

Pursuant to HOLA, until recently the Treasury Department's Office of Thrift Supervision (OTS) had "plenary authority to issue regulations governing" savings institutions.[9]  *See Fidelity Federal Sav.*, 458 U.S. at 160 (citing 12 U.S.C. § 1464(a)(1)).  The Supreme Court has noted that this statutory language found in HOLA "suggests that Congress expressly contemplated, and approved, [OTS'] promulgation of regulations superseding state law." *Fidelity Federal Sav.,* 458 U.S. at 162 (citing 12 U.S.C. § 1464(a)).  Indeed, "it would have been difficult for Congress to give the [OTS] a broader mandate." *Fidelity Federal Sav.,* 458 U.S. at 161 (citation omitted).

Consistent with this broad mandate, the OTS has promulgated the following regulation:

---

[9] As discussed below, the regulatory framework relating to HOLA changed as a result of the Dodd–Frank Wall Street Reform and Consumer Protection Act, which was enacted after Plaintiff obtained the loan at issue.

SUMMARY MEMORANDUM OPINION; NOT INTENDED FOR PUBLICATION IN THE OFFICIAL REPORTERS

> Occupation of field. Pursuant to sections 4(a) and 5(a) of the HOLA, 12 U.S.C. 1463(a), 1464(a), OTS is authorized to promulgate regulations that preempt state laws affecting the operations of federal savings associations when deemed appropriate to facilitate the safe and sound operation of federal savings associations, to enable federal savings associations to conduct their operations in accordance with the best practices of thrift institutions in the United States, or to further other purposes of the HOLA. To enhance safety and soundness and to enable federal savings associations to conduct their operations in accordance with best practices (by efficiently delivering low-cost credit to the public free from undue regulatory duplication and burden), <u>OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation</u>. Accordingly, federal savings associations may extend credit as authorized under federal law. . . <u>without regard to state laws purporting to regulate or otherwise affect their credit activities</u>.

12 C.F.R. § 560.2(a) (emphasis added).

Subsection b of the regulation goes on to explain that state laws "purporting to regulate or otherwise affect the[ ] credit activities" of federal savings associations are preempted. 12 C.F.R. § 560.2(b).  Specifically, the types of state laws preempted are laws "purporting to impose requirements regarding"

> . . . .
>
> (3) "Loan-to-value ratios";
>
> (4) "The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan";
>
> (5) "Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees";
>
> . . . .
>
> (9) "Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit

SUMMARY MEMORANDUM OPINION; NOT INTENDED FOR PUBLICATION IN THE
OFFICIAL REPORTERS

>  solicitations, billing statements, credit contracts, or other credit-related documents . . . ."
>
>  (10) "Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages"; [and]
>
>  (12) "Usury and interest rate ceilings to the extent provided in 12 U.S.C. 1735f–7a and part 590 of this chapter and 12 U.S.C. 1463(g) and § 560.110 of this part . . . ."

12 C.F.R. § 560.2(b).

In contrast, subsection c specifies that the following types of state laws are not preempted "to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section [quoted above]":

>  (1)   Contract and commercial law;
>
>  (2)   Real property law;
>
>  (3)   Homestead laws specified in 12 U.S.C. 1462a(f);
>
>  (4)   Tort law;
>
>  (5)   Criminal law; and
>
>  (6)   Any other law that OTS, upon review, finds:
>
>    (I)   Furthers a vital state interest; and
>
>    (ii)  Either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section.

12 C.F.R. § 560.2(c).

At the time this regulation was enacted, the OTS explained:

SUMMARY MEMORANDUM OPINION; NOT INTENDED FOR PUBLICATION IN THE OFFICIAL REPORTERS

> [w]hen analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed [among the illustrative examples of preempted state laws] in paragraph (b) [of § 560.2]. If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of [the types of state laws not preempted, as described in § 560.2(c)]. For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

61 FR 50951-01, 50966-67, 1996 WL 548771 (F.R.).

In an Opinion Letter issued approximately three months after the preemption regulation was promulgated, the OTS further elaborated on the preemption analysis when asked about the viability of two Indiana laws applicable to credit card transactions. OTS Opinion Letter P-96-14, 1996 WL 767462 (Dec. 24, 1996.) First, with respect to a commercial law that required lenders to make certain disclosures similar to those found in TILA, the OTS found that the law was preempted consistent with paragraph (b)(9) of the regulation which specifically identifies laws relating to disclosures as preempted. 12 C.F.R. § 560.2(b)(9); 1996 WL 767462 at §§ I, I(B).

In contrast, the OTS determined that Indiana's deceptive acts and practices (DAP) statute was not preempted. 1996 WL 767462 at § II(C). The DAP law was a statute of general applicability "that prohibit[ed] specified acts and representations in all consumer transactions without regard to whether the transaction involve[d] an extension of credit." *Id*. (emphasis added). For example, the OTS noted in the introduction section of the letter,

> the [DAP] statute prohibits a person who regularly engages in consumer transactions from making representations that "a specific price advantage exists as to [the] subject

> of the consumer transaction, if it does not and the [person] knows or should reasonably know that it does not" and from making oral or written representations that a consumer transaction involves "rights, remedies or obligations, if the representation is false and if the [person] knows or should reasonably know that the representation is false." Ind. Code § 24–5–0.5–3(6) & (8) (1995).

1996 WL 767462 at n.5.

The OTS went on to explain that because "[s]tate laws prohibiting deceptive acts and practices in the course of commerce are not included in the illustrative list of preempted laws," such statutes are not subject to a preemption challenges on their face. *See* 1996 WL 767462 at § I(C). Rather, "a more extensive preemption analysis of Indiana's DAP statute [wa]s required" and the OTS examined the law's affect on "lending" *Id*. Because the statute "affecte[d] lending to the extent that it prohibit[ed] misleading statements and practices in loan transactions," a presumption arose that the statute was preempted. *Id*. However, the OTS did not intend "to preempt state laws that establish the basic norms that undergird commercial transactions." *Id*. As such, the OTS reasoned:

> [t]he Indiana DAP falls within the category of traditional "contract and commercial" law under § 560.2(c)(1). While the DAP may affect lending relationships, the impact on lending appears to be only incidental to the primary purpose of the statute—the regulation of the ethical practices of all businesses engaged in commerce in Indiana. There is no indication that the law is aimed at any state objective in conflict with the safe and sound regulation of federal savings associations, the best practices of thrift institutions in the United States, or any other federal objective identified in § 560.2(a). In fact, because federal thrifts are presumed to interact with their borrowers in a truthful manner, Indiana's general prohibition on deception should have no measurable impact on their lending operations. Accordingly, we conclude that the Indiana DAP is not preempted by federal law.

SUMMARY MEMORANDUM OPINION; NOT INTENDED FOR PUBLICATION IN THE
OFFICIAL REPORTERS

1996 WL 767462 at § II(C). [10]

Because the CPPA is not directed at savings institutions and is similar to the Indiana DAP statute, the instant court will utilize this same "as applied" analysis to examine whether Plaintiff's claims have more than an "incidental affect on the lending operations of" Wachovia FSB.  *See* 12 C.F.R. § 560.2(c); *see Jones v. Home Loan Investment, F.S.B.*, 718 F. Supp.2d 728, 734-35 (S.D.W. Va. 2010); *cf.*, *In re Ocwen Loan Servicing, LLC Mortg. Servicing Litigation,* 491 F.3d 638 (7th Cir. 2007) (Posner, J) (employing an "as applied" analysis to evaluate each of Plaintiff's claims, although not explicitly stating so); *Casey v. F.D.I.C.*, 583 F.3d 586, 593-95 (8th Cir. 2009). [11]

---

[10] This opinion letter is in no way inconsistent with an earlier OTS letter finding certain provisions of the California Unfair Competition Act preempted.  *See* OTS Opinion Letter P-99-3, 1999 WL 413698 (March 10, 1999) (finding that the "narrow circumstances" presented by the California provisions justified preemption because they related to "three specific areas of lending operations, including advertising, forced placement of hazard insurance, and the imposition of certain loan-related fees."); *McAnaney v. Astoria Financial Corp.*, 665 F.Supp.2d 132*,* 166-67 (E.D.N.Y. 2009) (noting that the earlier California opinion letter was not at odds with the later Indiana opinion letter)

[11] On July 21, 2010, the Dodd–Frank Wall Street Reform and Consumer Protection Act was enacted.  Pub.L. 111–203, July 21, 2010, 124 Stat. 1376.  Under Dodd-Frank, savings institutions no longer "occupy the field in any area of State law" and the same preemption standards that apply to banks, pursuant to the NBA, apply to savings institutions under HOLA. 12 U.S.C. § 1465(b).  Specifically, state law is preempted to the extent it "prevents or significantly interferes with the exercise by the national bank of its powers." 12 U.S.C. § 25b(b)(1)(B).  Additionally, under new regulations, national banks are prohibited from "engag[ing] in unfair or deceptive practices."  12 C.F.R. § 7.4008.
   Additionally, the HOLA preemption regulation has been superseded by a new regulation which eliminates the "occupy the field language" and provides that associations have the "maximum flexibility to exercise their <u>fiduciary</u> powers in accordance with a uniform scheme of Federal regulation."  12 C.F.R. § 150.136 (emphasis added).  The new regulation also lists the

SUMMARY MEMORANDUM OPINION; NOT INTENDED FOR PUBLICATION IN THE OFFICIAL REPORTERS

    2.    <u>Count I</u> [12]

In Count I, Plaintiff alleges that Wachovia FSB violated the CPPA by extending her an "unconscionable" loan without regard to her ability to pay. (Pl.'s Br. at 2.) Specifically, Plaintiff alleges that Defendant "made, funded and securitized an unconscionable loan" in violation of Section 28-3904(r)(1), which prohibits making or enforcing "unconscionable terms or provisions" of a sale or lease with knowledge "that there was no reasonable probability of payment in full of the obligation by the consumer." (Compl. ¶ 69.) This claim is preempted because determinations about whether a consumer has the ability to repay a loan depend on "loan-to-ratio" values, "terms of credit," as well as "processing," "origination," and "participation in" the defendant's loan activities. *See* 12 C.F.R. § 560.2(b)(3), (4), (10). More importantly, the statutory provision has more than an "incidental affect on the lending operations of" defendants. *See* 12 C.F.R. § 560.2(c).

---

types of state laws that are preempted, for example laws relating to fiduciary fees, registration, licensing, advertising and marketing. *Id*. To the extent the following laws only incidentally affect the fiduciary operations of savings institutions, they are not preempted: contract and commercial law, real property law, tort law; criminal law, probate law, "any other law that the OCC, upon review, finds: (i) furthers a vital state interest; and (ii) either has only an incidental effect on fiduciary operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section." 12 C.F.R. § 150.136(c).

These new statutes and regulations do not apply to the current dispute because it involves a loan finalized in June 2007, over three years prior to Dodd-Frank.

In a supplemental filing post enactment of Dodd-Frank, Plaintiff raises issues regarding application of the NBA to the present dispute. (*See* Doc. 25.) Inasmuch as Plaintiff has conceded to dismissal of the only bank defendant, Wachovia Mortgage Corporation, it is unclear what relevance the NBA, whether before or after Dodd-Frank, has in this case.

[12] Plaintiff asserts Count I solely against World Savings, Wachovia FSB and Wells Fargo.

SUMMARY MEMORANDUM OPINION; NOT INTENDED FOR PUBLICATION IN THE OFFICIAL REPORTERS

Next, Plaintiff alleges defendants violated the CPPA by "promoting, underwriting and ultimately funding Plaintiff's loan." (Compl. ¶ 71.) This claim is also preempted because it has a more than incidental affect on defendant's "advertising" and "originating" of loans. *See* 12 C.F.R. § 560.2(b)(9) - (10).

Plaintiff's last allegation in Count I alleges Defendant paid "yield spread premiums and/or other financial incentives to Equitable to originate" a loan with unconscionable prepayment penalties, with an adjustable rate, with negative amortization and without regard to Plaintiff's ability to pay the loan. (Compl. ¶¶ 71a - 71c; 72 - 73.) [13] There are several problems with this claim. As addressed above, any references to the institution's decision to authorize the loan despite Plaintiff's "ability to pay," are preempted. Thus, the only potentially viable claim relates to the payment of a "yield premium" and/or "other financial incentive" in connection with the loan. This claim too is preempted because it involves "loan-related fees" and implicates loan "origination," in more than an incidental manner. *See* 12 C.F.R. § 560.2(b)(5), (10). [14]

Inasmuch as all of the allegations raised in Count I are preempted, Count I of Plaintiff's complaint will be dismissed.

---

[13] Plaintiff alleges that the broker and other fees paid to Equitable exceeded $10,000. (Compl. ¶ 49-50.) It is unclear if Plaintiff challenges all or a portion of the fees. (*See id*.)

[14] "A 'yield spread premium' is a term of art that describes a sum paid by a mortgage lender to a broker. The lender recoups this fee by charging the borrower a higher interest rate. . . . [These premiums are] calculated by comparing the rate of the loan at closing with the par rate offered on the loan in question at the time of closing. Such lender payments to brokers are not unlawful per se, but under RESPA the fees associated with [mortgage] loans . . . must be disclosed to the borrower." *Down v. Flagstar Bank, F.S.B.,* No. 3:10–cv–847, 2011 WL 1326961, at *4-5 (E.D. Va. 2011).

SUMMARY MEMORANDUM OPINION; NOT INTENDED FOR PUBLICATION IN THE OFFICIAL REPORTERS

    3.    <u>Count II</u>

In her complaint, Plaintiff brings Count II against Equitable, World Savings, Wachovia FSB and Wells Fargo alleging violations under various provisions of the CPPA. *See* D.C. Code § 28-3904. However, in her response to Defendant's Motion to Dismiss, she concedes that the following claims relate solely to Wachovia FSB:

- World Savings mailed Plaintiff the loan documents and the company "made misrepresentations. . . <u>in their loan paperwork</u> regarding the mortgage product and the impact on her equity." (Doc. 25, Pl.'s Resp. at 20)(emphasis added).

- "World Savings misrepresented material facts about the World Savings' mortgage product." (Doc. 25, Pl.'s Resp. at 21.) Specifically, those alleged misrepresentations involved telling Plaintiff her monthly payments would be fixed and neglecting to tell her that her monthly payments, interest rate and principal balance would increase. (*Id.*); Compl. §§ 77(c),(e), (f); *see* §§ 28-3094(e), (f).

- Plaintiff's "supporting documents" establish that World Savings supplied her with a loan that had unconscionable terms, knowing it provided her no substantial benefits, knowing she had no reasonable probability of payment in full, and knowing the fees stripped her of equity, thereby taking advantage of her age and inability to understand the language in the agreement. (Doc. 25, Pl.'s Resp. at 22)(emphasis added); *see* §§ 28-3094(r)(1),(2), and (5).

All of these claims, <u>which she specifically links to the loan documents</u>, have a substantial affect on the "disclosures" Wachovia FSB is allowed to make under HOLA, as well as the "origination" of their loans, "loan-related fees," and finally the "terms of credit, amortization of loans and deferral and capitalization of interest." *See* 12 C.F.R. § 560.2(b)(4), (9), (10). Thus,

SUMMARY MEMORANDUM OPINION; NOT INTENDED FOR PUBLICATION IN THE
OFFICIAL REPORTERS

these claims are preempted. [15]

Finally, in Count II, Plaintiff claims Defendants failed to supply her with a copy of her loan documents. (Doc. 25, Pl.'s Resp. at 21)(emphasis added); *see* §§ 28-3094(r)(q). Said claim is also preempted because it would have more than an incidental affect on a lender's disclosure and credit activities. See 12 C.F.R. § 560.2(a), (c).

Accordingly, Plaintiff's claims in Count II will be dismissed as asserted against the Wachovia FSB.

4. Count III

Count III alleges a common law unconscionability claim against defendant. Specifically, Plaintiff alleges that

---

[15] The instant case is unlike those cases involving affirmative misrepresentations outside of the loan documents. *See Kajitani v. Downey Sav. and Loan Ass'n, F.A.* 647 F.Supp.2d 1208, 1220 (D. Hawaii 2008) (finding oral misrepresentations about rage, charges and terms of financing were not preempted because the disclosure requirements relate to documents) (citing 15 U.S.C. § 1604; 12 C.F.R. § 560.2(b)(9)); *Reyes v. Downey Savings and Loan Ass'n, F.A.*, 541 F. Supp.2d 1108, 1113-15 (C.D. Cal. 2008) (allowing state claims under California statute that prohibits unfair business practices where plaintiffs claimed the lenders "promised" certain loan terms, but did not follow through with such promises); *Mincey v. World Savings Bank*, FSB, 614 F. Supp.2d 610, 643-46 (D.S.C. 2008)(noting that plaintiffs did not appear to assert fraud based on affirmative misrepresentations and finding the claims preempted because plaintiffs complained about what defendants "should" have disclosed, but citing with approval cases allowing claims based on oral misrepresentations.); *In re Ocwen Loan Servicing, LLC Mortg. Servicing Litigation,* 491 F.3d 638 (7th Cir. 2007) (Posner, J) ("The plaintiffs interpret the statute to forbid deceptive practices, such as falsely representing sponsorship or approval of Ocwen's services. If this is like common law fraud, then it probably is not preempted. But is it? One cannot tell from the complaint whether, for example, the charge is limited to deliberate deception or whether as interpreted by the plaintiffs the Act creates a code of truthful marketing that would constitute the regulation of advertising, which is one of the preempted categories listed in subsection (b)").

SUMMARY MEMORANDUM OPINION; NOT INTENDED FOR PUBLICATION IN THE OFFICIAL REPORTERS

- Defendant "obtained and finalized the mortgage to [her] home under procedurally and substantially unconscionable circumstances." (Compl. ¶ 82.)

- "The terms of the transaction were substantively and procedurally unconscionable, unreasonably favorable to Defendants, and varied grossly from the market rates to the detriment of Plaintiff.  The mortgage offered and the methods of obtaining and finalizing the mortgage are so gross as to shock the conscience." (Compl. ¶ 84.)

As discussed above, Plaintiff's challenges relating to defendant's advertisements, loan document disclosures, or terms of the loan are preempted.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's state law claims as asserted against the Wachovia FSB defendants will be dismissed with prejudice pursuant to Federal Rule 12(b)(6). Plaintiff's federal claims as related to all these defendants survive the motion to dismiss.

SO ORDERED.

March 30, 2012

_____
Robert L. Wilkins
United States District Judge